THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* DANIEL RIJOS OQUENDO, Defendant and Appellant.

No. 9043. Argued December 12, 1941.—Decided January 23, 1942.

*Adolfo Valdés* for appellant. *George A. Malcolm, Attorney General, R. A. Gómez, Prosecuting Attorney,* and *Luis Negrón Fernández, Assistant Prosecuting Attorney,* for appellee.

MR. JUSTICE TODD, JR., delivered the opinion of the court.

Daniel Rijos Oquendo was convicted by a jury in the District Court of San Juan of involuntary manslaughter, and has taken this appeal from the judgment whereby he was sentenced to six months in jail. The only error assigned in support of his appeal is "that the verdict is contrary to the evidence."

The information filed, in its pertinent part, reads as follows:

"....that the aforesaid Daniel Rijos Oquendo, on or about November 23, 1940, and in the municipal district of San Juan, P. R., which forms part of the judicial district of San Juan, P. R., while driving a truck, a heavy motor vehicle, along Fernández Juncos Avenue, within the urban zone, did unlawfully operate and conduct it so carelessly and negligently and without the proper care and circumspection, that by unlawfully driving (1) at an excessive speed (2) along the center of said highway (3) without reducing such speed when nearing a street crossing, although he was overtaking or approaching pedestrians who walked on both sides of the road, and without taking into account the width of, and traffic over, the highway, failed to take due precautions and allowed the same to unlawfully collide with the body of Juan Quiñones O'Neill, who was walking on the center of the aforesaid highway while crossing it from north to south, striking him, and thus unlawfully inflicting on him bruises and contusions of a serious nature which wrongfully caused the death of said Juan Quiñones O'Neill..."

The evidence for the prosecution consisted of the testimony of three witnesses, of whom only Pablo Hernández Pérez saw the accident. He testified, in short, that at about 7 p.m. on November 23, 1940, the defendant was driving a truck, at about 40 miles per hour, along Fernández Juncos Avenue in the center of the highway, towards Río Piedras; that the truck had its lights on and sounded the klaxon; that at that moment and when it approached Monserrate Street, Juan Quiñones was crossing the highway, and at the center of the highway, which is wide, the truck struck him with its left mudguard and he fell to the ground and lay there stretched out a little to the left; that the defendant stopped 25 feet away, alighted, and picked up the man and took him to the hospital.

The other two witnesses for the prosecution although they did not actually see the collision, became aware of the accident when they heard the impact of the truck against the body of Quiñones, and corroborated the testimony of the preceding witness as to the body lying stretched out towards the left from the center of the road.

The documentary evidence produced by the prosecution consisted of the death certificate of Juan Quiñones O'Neill and of the report on the post-mortem examination made by Dr. Antonio Martínez Alvarez, in which it is stated that the cause of the death was an intrathoracic hemorrhage and traumatic shock resulting from the fracture of the second, third, and fourth left ribs.

The evidence for the defense consisted of the testimony of three witnesses and of the defendant himself. Julio Rossy and Sixto González, who were together at the time, testified more or less similarly, that is, that Juan Quiñones was crossing the highway when the truck was coming up driven by the defendant; that the latter sounded the horn and that they shouted to Quiñones not to cross but that he went on and then was stricken by the truck; that this occurred in the middle of the street crossing; that they could not say

which part of the truck had stricken him because they were on the opposite side; that the truck stopped about three or four yards beyond the spot.

The other witness, Tito Nieves Torres, stated that he was driving a truck in an opposite direction to that of the defendant and saw, about 40 yards away, a man crossing as far as the middle of the road, and then saw coming up the defendant's truck and "on reaching the center of the highway, the boy (defendant) tried somewhat to avoid the accident, but nevertheless caught him with the right side of the truck's body"; that defendant's truck was traveling at 20 or 25 miles, sounded the horn, and stopped at a distance of one yard.

Explaining the accident, the defendant testified thus:

"Q. What happened when you got near the Monserrate street crossing?

"A. I saw somebody, an old man crossing, somebody whom I saw crossing and far ahead a little girl crossed.

"Q. What did you do?

"A. I applied the foot brakes and sounded the klaxon.

"Q. And what happened?

"A. Then I felt a knock as if against the truck's cab and immediately stopped and applied the foot brakes and looked and saw a gentleman on the ground and shut off the motor and picked him up.

"Q. Which part of the truck struck him?

"A. One side of it; the side on which I was sitting."

Further on he stated that his lights were on and that he sounded the klaxon. On cross-examination by the prosecution, he testified as follows:

"Q. Upon your sounding the klaxon, did the man go on his way towards the center of the highway notwithstanding your having sounded the klaxon?

"A. He went on.

"Q. And you did not stop?

"A. But he was not on my side and there was nothing in my way; he was going along the center.

"Q. And on which side were you driving?

"A. On my right.

"Q. And how can that possibly be since you have heard the witnesses testify that you struck him on the center of the highway?

"A. He fell on the center of the highway."

Without any objection from the defendant, the lower court admitted the statement made by the defendant before the district attorney in the preliminary investigation of the case, and from the same the following appears:

"District Attorney.—Did you see the man who was crossing?

"Witness.—Yes, sir, and when I sounded the klaxon, *I thought that he would stop, that he would not go on, but it seems that he went on and collided against the body of the truck.*

"District Attorney.—And in spite of that you failed to apply the brakes and went ahead?

"Witness.—*I went on because there was nothing ahead.*

"District Attorney.—Did you not see that man in the center of the highway?

"Witness.—He was walking along the center of the highway." (Italics ours.)

We think that the jury was warranted, on such evidence, to bring in a verdict of guilt. The evidence was conflicting and the jury resolved the conflict against the defendant. It has been neither alleged nor shown that the jury was moved by passion, prejudice or bias, and as they were in a better position than we are to weigh the evidence by the manner in which the witnesses testified, it can not be held that they manifestly erred in weighing the same. *People* v. *Cruz, ante,* p. 569.

The doctrine applicable to the case at bar is the one laid down in *People* v. *Benjamin,* 44 P.R.R. 431, 436, where this court speaking through Mr. Chief Justice Del Toro said:

"The road was straight and rather wide. The old woman had reached or was near the center of the road. She could have been seen on time to avoid the accident. Not only from the evidence for the prosecution, in spite of what the first witness said, but also from that for the defendant himself, it may be inferred that the car was

traveling on the left side and so fast that it could not stop on time *or the defendant was driving so carelessly that he did not notice the woman who was crossing the road or having seen her, he was so unskillful that he did not know how to avoid injuring her. This is not the case of a person who suddenly appears on the highway when it is impossible to avoid colliding with such person.''* (Italics ours.)

Juan Quiñones was already on the center of Fernández Juncos Avenue, which is a wide thoroughfare. If the defendant had been driving his truck moderately and taking the proper precautions, he might easily have avoided the accident. Upon seeing the person who was crossing the highway he ought to have slowed down sufficiently to enable him to stop or to swerve his vehicle before the collision and not to rely solely on his klaxon. It seems, however, that the defendant, according to his testimony, thought that Quiñones would stop and went ahead without reducing his speed, and then could not avoid striking him with the left mudguard. That the knock was a hard one is shown by the three fractured ribs and the internal hemorrhage from which Quiñones died. In view of the attendant circumstances, we would not be justified in disturbing the verdict returned by the jury in this case.

The judgment appealed from is affirmed.

Mr. Justice Snyder took no part in the decision of this case.